We have five cases on the calendar this morning. Government employee appeals, patent case from the district court, a trade case from the court of international trade, and a trademark case from the patent and trademark office. A trademark case and one of the government employee cases are being submitted on the briefs and will not be argued. So we have three argued cases. The first is Larry Dow versus the General Services Administration, 2008-3352, Mr. Cato.  And you know some of the issues right up front here, mootness, and we've got a second case and a motion to remand, which you have consented to. There are three issues that have arisen since we submitted our reply brief that I think inherit discussion. The first, obviously, is this court's order that we be prepared to discuss the issue of mootness arising out of the joint request to remand the related case. The second is the government's recent motion to remand this case to the MSPB, which we obviously consented to. I understand that the government's motion to remand relates solely to mootness, as I read it. Yes, I believe that the government motion only wants to have another bite at the mootness apple. They want a factual determination to be made as to whether or not the offer that was made is sufficient. If it is, then presumably it would moot the case. Our position would be, and we would argue, that once this case were remanded to the board, that, in fact, the board should make whatever determinations it needs to make if it wants to revisit its earlier decision on the jurisdictional basis. What is your basic position? Do you disagree with the government that the case is moot? Well, as we said in our briefing, we certainly wish it were moot. It certainly should be moot. I believe it will be moot because I believe that we will prevail on the Viola case if we do prevail and we get all the relief that we're seeking in Viola. Am I correct that the mootness dispute, the question of mootness, basically turns on what is the appropriate relief in this kind of a case? Certainly, Your Honor. If the relief is the same that could be obtained in this case, that could also be obtained in the Viola case. Do you contend that if you were to prevail, you'd be entitled to back pay? Prevail in which case, Your Honor? In this case. I believe that we would have an argument. Obviously, this is not before this Court at this point. I know, but that seems to me that this is the whole question of mootness is involved in what would be the proper relief if you prevail because what the government seems to say is the case is moot because you've gotten everything out of it. You would be entitled to get if you did prevail. That's the argument they made here. The argument that they make in their motion is that there are factual determinations which must first be made to determine whether or not this case is moot, and that's the basis for their motion to remand this case. Can I just stop for a second? I thought I heard you suggest a couple minutes ago that, well, it would arguably be moot if you get what you think is the appropriate adjustment in the Viola case, correct? Yes, it certainly could be. Are you arguing that you can get back pay? Under this case? No, under the Viola case. Absolutely. Absolutely. We are arguing that the relief that we would be seeking in the Viola case would be what the Board calls a reconstruction, and we know pretty much how that works out in this case because we've gone fairly far down the path. Mr. Dowd would be offered the job. The issue that we would litigate on remand and the issue that we were litigating before we kind of got short-circuited, I think. On the Viola case? On the Viola case was, in fact, is a prospective offer sufficient? That is all something that is not before this Court. It really was never decided by the Board. The Board never reached that issue in this case. Okay, well, here's the question I have, and I don't want to... If that, accepting all of that, so you've got this Viola case and you're back there litigating and you're going to make your arguments win or lose, and maybe it will end up back here, on the question of whether or not you've gotten the right relief, including back pay, why does it, so do you agree that the fact that all of those issues are being teased out in that context, does that moot this case? It would only moot it if we obtained it. The fact that we might be able to obtain it in one case, on one legal theory, would not moot. So you're suggesting that even if for some reason they decided you don't get back pay under Viola, it comes back here and we agree, there would still be a separate and distinct argument or issue with respect to the 300 allegation and back pay under that provision? Exactly, Your Honor. And these cases started together before the MSPB. They took divergent paths for reasons that are not important here, but it really made sense to consider them together and it continues to make sense to continue them together, to consider them together. And that is principally the reason why we consent to remanding this case to the Board. Let's put this all back together and let's let the Board make the fact findings that it needs to make to determine what relief... Well, except, I mean, I guess the question I have with respect to remand is does that do away with the determination on jurisdiction? That, after all, is what this case was about in the first instance. I mean, another alternative would obviously be to kind of stay this case pending the outcome of that. And let's assume the jurisdictional issue is very much a lie. Then does our remanding the case sort of concede the jurisdictional issue? I mean, that's obviously something I should ask the government. I mean, I think the Board, unless this Court decides jurisdiction one way or another, the Board would be free to revisit it. It could come up with the same decision or it could change its decision. I would ask that this Court simply not, I mean, if it's going to decide jurisdiction, decide because the Board has jurisdiction. But do you think we can remand it for further analysis of the mootness question without necessarily giving one way or the other on the jurisdictional question? I guess because mootness is a jurisdictional issue of its own and the Court and the Board always has the authority to determine its own jurisdiction. But the request is not just to remand. The request is to vacate it and remand. Correct. We have to vacate it, don't we? We can't remand to some entity that has said that it lacks jurisdiction. I think that that's technically correct. You would have to vacate it and remand it. I think the government would prefer that the only issue alive on remand would be whether the Viola case renders it moot. I would, and I will if I have the opportunity, argue to the Board, no, you really got it wrong. We get short forms by the Board on jurisdiction. There's no discussion of it. There were only two Board members. There'll be a new Board. There'll be three Board members. Maybe they'll take another look at it. It is an important issue, and I think the decision has some problems, which we've articulated in our brief. So I would argue if I had the opportunity in jurisdiction before the Board again. I might lose again. Obviously, it's an uphill battle, but I'd like to have that opportunity. So is that what you're given, you think, by a remand? I mean, if we remand it and presumably it's not mooted out, then you get a do-over on the jurisdictional question? Is that what you anticipate? I think that I could always try. Fair enough. Unless you say, no, I can't do that, but I think your question really hits it on the head. If the Court vacates the Board's decision, I think the decision's vacated, and so it may end up being the exact same decision on their jurisdiction. Let me come to the merits now. Well, the merits of the jurisdictional issue, I guess. But anyhow, what is your theory? What theory do you claim that there is jurisdiction here? They have to be the action, the denial of employment, has to have been affected in some way by the Outstanding Scholars Program. Is that right? Yes, Your Honor. And what bothers me about it is there's an affidavit from the man who apparently made the decision, Jaleco? Yes. Mr. Jaleco gave two reasons why he said he was recommending against this man's appointment, and you may agree or disagree with those reasons, but those reasons seem to me to have nothing to do with the Outstanding Scholars Program. It was the fact that, one, he had been primarily engaged in law enforcement work, which wasn't thought to be appropriate background, and two, the feeling that he was only interested in a job with this agency because it was a promotion and he suspected that in a year or two, if they did hire him, he'd go off and get another better job and leave him. Now, how is that in any way, and there's no suggestion in anything that he said, that the reason he was not hired was because of the Outstanding Scholars Program? The reason that he was not hired, Your Honor, was because the people within the Outstanding Scholars Program were. Well, that's what you say, but I don't see any basis for that in light of that affidavit, which suggests that he was not hired not because of the Outstanding Scholars Program, but because they didn't think, for those various reasons, he was qualified for the job. I think that this takes us a little bit into the Viella case, where the board found there was a violation of Viella, and that as a factual matter, which is now res judicata, there was only one selection. So there were the competitive candidates, of which Mr. Dow was the top-rated. There were the outstanding scholars. They were all considered together. That's a matter of fact that is res judicata at this point. What do you mean together? At the same time? It was substantially. I still don't understand what your answer is to my point that the record shows that he was not hired not because of the Outstanding Scholars Program, but because of what they deemed to be deficiencies in his qualifications. The board said the separate but nearly simultaneous vacancy announcements were for the same position. The relief that we would get under 300 would be a reconstruction of the selection process without consideration of the illegally considered candidates. The illegally considered candidates were the outstanding scholars. So unless the agency were to make the argument that is being made before this court at Marshall that, well, gee, if we knew we could only select the veteran, we would have canceled and not selected anyone at all. Unless they were to make that argument, then they're left with, well, we need to make a selection, and the only person on the list is Larry Dow. And we know in this case that they're not making the Marshall argument because they went ahead and made him the tentative job offer. They didn't say, oh, no, we wouldn't have selected. Can I ask Judge Friedman's question maybe another way? Because I think he and I are sharing some of the same questions. You have to have under 300, you need an employment practice, and you need to have that employment practice applied to a particular individual. What is the employment practice here? The employment practice was failure to require the outstanding scholars candidates to take a competitive examination. So the employment practice is the process that was used to put together the list on the OSP program. Exactly. Well, your candidate went through a different chain. I mean, I guess I'm having the same question Judge Friedman is having as to what was done with respect to the OSP candidates. So what would be different is, I guess, is subsequently done that you combine the list. But in instances where there's a separate list, I'm having trouble seeing why that was applied to your candidate. Because the first is a factual matter. It was not a separate list. The board found in its final decision, the board that was not, no petition was sought by OPM to the board for reconsideration, no petition was sought by OPM to this court, is a final factual finding that there was but one selection, and they used both of these methods. I don't understand. I don't think anybody's disputing that there was a final selection. The question is whether or not there were two separate proceedings intended to reach that final selection process. And the board found that there was not. There was one. They were the virtual simultaneous. Let me see if I can find it. J.A. site is 51. These, as a factual matter, it's one selection. The separate but nearly simultaneous vacancy announcements were for the same position. That's the factual finding. Judge, and so I'm obviously running out of my time, so I'll just make two points on this. The first is this is the same thing that was before this court in, I guess, was Meeker. In Meeker, the OPM changed how it was going to compute veterans' preference, and someone who was hurt by that, who was not entitled to veterans' preference, said, you gave them more preference than you were entitled to. And this court said, yes, that's a violation, or at least jurisdictionally. That's state's claim under Chapter 300. We're the same position. We're saying you gave more consideration to the outstanding scholars' candidates than to which they were entitled. In fact, they were entitled to none because it was against the law to consider them, and the board has found that. I think the analogy, the quickest one I could have, is that if counsel and I had a foot race and anyone with a government ID got a 50-yard head start, I didn't get the 50-yard head start. Could I complain about that? She looks like she'll be faster anyway. She still beat me. I know. I know. It's probably a bad analogy. But in any event, there's no question that Mr. Dowd was harmed by the fact that these individuals were illegally considered. Well, that's the issue. That's the basic issue. How is he harmed when the record shows that the reason he was not hired was not because of the presence of these outstanding scholars, but because the man who interviewed him and studied his case didn't think he was qualified? Okay. And the answer, Judge, as best as I can say, is his harm was he should never have been compared with the outstanding scholars. But there's no indication that he was compared with the outstanding scholars. They had to select somebody, and they selected the outstanding scholars. If their argument were the Marshall argument, that, oh, gee, we wouldn't have selected anyone, that might be a different case. They haven't made that argument. What they've said is, yes, we would have made a selection. We would have gone to OPM to get passover authority. If OPM denied it, we would have offered you a job. Your argument would be the same, I take it, if the record showed that the reason they did not hire him was because they didn't think his training was adequate. Suppose, for example, there was a position open as a chemist, and you had the same outstanding scholars and so on, and someone came in and said, well, it's true, I haven't had any chemical training, but I've had mathematical training, and someone who has had mathematical training is quite able to pick up chemistry. Therefore, I am well qualified for this chemist position. And they say, what we're looking for is a chemist, not a mathematician. And therefore, you're not qualified. Now, how is that case any different from this case, where you say the result would be the same? I think the difference is, Your Honor, and I think this is very critical, the difference is that your point, your example, goes to the merits. Mine goes to jurisdiction. In terms of established jurisdiction, I need well-pleaded allegations. My allegation is, you gave illegal consideration to these candidates, and but for that illegal consideration, I would have gotten the job. Your defense on the merits is, no, you wouldn't. We would have hired somebody else anyway. You might win on that. But I'm entitled to my day in court to challenge that. And I didn't get that in this case. I'm way into my time. You are, but that's because you've had a good interaction with the panel. We'll give you three minutes rebuttal, if you want it. Thank you very much. And Ms. Havisay, if she needs a little extra time, can have it. May it please the Court. I'd first like to address the motion to remand that we recently filed. There was a question from the panel about what the remand has to do with the board's jurisdictional issue. If this court remands to the board, which is what we've requested, the board can consider in the first instance whether this case is moot. If the board finds that this case is moot, then it's moot here, and it's moot at the board, and that's the end of it. But the board can't decide if it has no jurisdiction. That has been its holding. Would it revisit it without our reversing that determination or vacating it? Well, we've asked for our vacating and remanding. So in that case, it could revisit the issue. But even so, both the mootness question and the board's jurisdictional question in terms of the regulation. May I ask you a question? In your red brief, which you filed in April, point two, the first point in your argument, reads, Captain, this court lacks jurisdiction to consider Mr. Dow's Part 300 claim because it is moot. I take it in view of the remand that you are now seeking, this argument is no longer being pressed. Is that correct? Is our position that the case is still moot? What's changed is that we believe that there are records. That is my question to you. My question to you is, despite your motion to remand saying additional facts have to be found, is it your position that on the record now before us, we could and should hold this case moot? No, that's not our position. Our position is that there is a question as to whether this case is moot and a question that requires factual findings to be made by the board. I'm troubled by the fact that the Justice Department came in in April and told us the case was moot, and now three weeks before our argument they now tell us that it may be moot and therefore you should send it back to determine additional facts. It seems to me, if it was moot in April, I don't understand why it's no longer moot now. It may be moot, but why you no longer make that. But anyhow, I take it you're not arguing this point anymore, point two in your red group. We're not arguing point two in the sense that we're not arguing that this court can decide at this moment based on the record before it whether the case is moot Okay, now my next question to you is, what are the factual issues that need to be determined by the board in your view? Well, the full relief under Part 300 would be a reconstruction of the selection process without using the Outstanding Scholar Program. At the point that the MSQB decided this case, all that had happened was that the VIOA violation had been found. And Mr. Dow had filed a petition to enforce that. The agency had then offered him priority consideration. That was the point at which the MSQB's decision in this Part 300 case came out. But there were several things that happened after that, which we believe render the case moot. The agency reconstructed the certificate of eligibles. It submitted a request to OPM to pass over Mr. Dow. And then when that request was denied, the agency then tentatively offered him this position in the Human Resources Department. So the question is whether all of those actions that happened after the MSQB even saw that case. Now, Mr. Cato says he thinks if he prevails, he is entitled to back pay. And I gather the government's position is, if he prevails, whatever he's entitled to, he's not entitled to back pay. Is that right? Under the Part 300 case, the case law is not clear as to whether back pay is a part. So there's a dispute, and that's a legal question. That is a legal question. If there's a dispute over whether he's in his or isn't entitled to back pay, how can the case be moot? Well, he would only potentially be entitled to back pay if, for example, if the VIOA release was the same as the Part 300 release. Under VIOA, he would only be entitled to back pay if he was actually given the job. Because the point of VIOA, at least, is to go through the selection process and give the veteran the veteran's preference. If that happens, but the veteran is ultimately not hired for that position, then he's not entitled to back pay. This issue has not been definitively determined. Is that correct? That's correct. There are no cases saying yes or no on this back pay issue, are there? In the Part 300 context, no. So I guess I'm not following. The only way the issue would be mooted, the 300 issue, would be, as a practical matter, if under the VIOA claim, Mr. Dow got the job he wanted and eight years' worth of back pay. No, not necessarily, because it's our position in both of the cases that the job offer is all that he needed to get. Because if he had been given his veteran's preference initially or if the Outstanding Scholar Program had never been used, what would have happened is exactly what did happen after that. So this is just going to go on. So it's going to go back. There's going to be an adjudication of the VIOA claim. Right. No matter what he gets, it appears if the government maintains the view that he's not entitled to back pay, in this case, that issue is going to be litigated. Yes. And then if he prevails, then I guess under that circumstance, arguably the Part 300 issue case will be mooted, but only under that circumstance. I mean, the only way that issue gets mooted is if he gets back pay and a job under the VIOA claim, right? No, because the relief under both claims is this reconstruction of the process. It's the government's position that the process hasn't fully reconstructed. To the extent that he got a job offer, he still needs to meet the qualifications for that job. The letter that he received said that he needed to pass a security clearance. If he doesn't pass a security clearance, let's say, he can't be hired for the job, then it's over. He's gotten what relief he would have gotten under VIOA or Part 300, so it's not necessarily moot if he gets the job. It's just moot if, in either the VIOA case or in this case, the board finds that he's gotten full relief, that what the agency has done thus far has been a full reconstruction of the process, considering his veterans' preference and not using the outstanding clause. I have a question. Before the mootness issue can be definitively resolved, whether the case is or isn't moot, would it be necessary to determine whether or not he's entitled to back pay if he were to prevail? No, because the issue is— I guess it would be sort of part of the determination as to whether this case is moot, because if relief would include back pay, then he has— If he is entitled to back pay and they haven't offered him back pay, then the case is not moot. Do you agree to that? If he is, in fact, entitled to back pay, it has not been offered. See, it's bothering me about this. It seems to me this mootness question arises in a most peculiar way. We're told that the case is moot because he's not entitled to back pay, and therefore you should decide he's not entitled to back pay, but the question of whether he's entitled to back pay only arises if you determine that he prevails on the merits. And I have never seen a case in which, in order to decide whether the case is moot, we have to decide an issue that may not ever arise in the case, because there'd be no question about back pay if ultimately it is determined that he's not entitled to prevail. And it strikes me as sort of saying, well, to get from here to there, the first thing you have to do is go back a mile and then turn around and then walk forward. I've never seen a case— a case is a decision of some tribunal, an appeal is taken, and then something else new happens. And they say, well, there's no longer a controversy between the parties. The plaintiff has gotten what he wants. But this crazy sort of thing, somebody's going to have to maybe decide whether or not he's entitled to back pay, which is a significant issue that has not been resolved, in order to decide whether the preliminary question of whether he's entitled to prevail is moot. It just strikes me, frankly, as a most peculiar situation. That is true, and I think part of that arises because of what happened in the Deola case. The only reason that this reconstruction occurred and he's received this tentative job offer was the MSPP's decision in that case. And also the issue of the relief in the Deola case, we don't dispute, would be back pay, assuming that he was actually entitled to be hired to that job, which we do dispute. But if he was entitled under Deola, there's no question that back pay is a form of relief. And also, as Mr. Cater admitted, if he prevails in the Deola case, this case becomes moot for a different reason. Can I just move you to this merit case here of jurisdiction in the first instance and what the board decided below? You heard Mr. Cater's answer. I took it to mean that the employment practice here that they are construing is the selection of a person for a particular job. Does the government agree with that? Would you construe that as being the employment practice in this case? I read Mr. Dowd's brief to assert that the employment practice is the Outstanding Scholar Program, that the Outstanding Scholar Program, because it violated veterans' preference rights and because it didn't require a civil service exam, was a violation of Part 300. And in that case, it wasn't applying to Mr. Dowd. As this court noted earlier, the reason that he was not hired was not because people were chosen under the Outstanding Scholar Program. The reason was because there were questions about his interest in the position and questions about his application. So it wasn't that he was not hired because there was this Outstanding Scholar Program. It was a separate decision. So there were two. Also, Mr. Dowd's point about there being the same announcement, that's not entirely what the board found. If you look at the joint appendix at page 51, the board was basically trying to distinguish, or not distinguish, but say that this case was not distinguishable from the Dean and Olson cases in which there was one single announcement because here there were two announcements, but they were basically for the same type of job. I take it that your basic position on the merits is that on this record, even if there were no Outstanding Scholars Program, he still wouldn't have been hired. Yes. Because they found that he was, for various reasons, not qualified. Right. And the board found that, as a factual matter, if you look at page 66 and 67 of the joint appendix, the board agreed with or found Mr. Jaleco's testimony to be credible in terms of the reason that Mr. Dowd was not hired. So it had nothing to do with the Outstanding Scholar Program. The Outstanding Scholar Program was applied to the people who applied under the Outstanding Scholar announcement. He applied under a separate announcement. He was ranked number one on that announcement, was interviewed, and then decided not to hire him based upon his qualifications. So the board, for that reason, properly found that it lacked jurisdiction. And what happened? Do they get a do-over on jurisdiction then? And let's assume this case isn't resolved on the mootness grounds. Then we vacated the board's opinion below. So does the board have to re-decide, revisit this issue of jurisdiction on Part 300? They can revisit the issue. I don't see why they would come to a separate conclusion A different conclusion. Right, a different conclusion because nothing has changed in terms of the facts on that issue. Nothing has happened since the board's decision has changed the fact that the Outstanding Scholar Program was not applied to Mr. Dowd. But certainly, if you vacate that opinion, they can revisit it if they choose. These reasons, we request that the court remand to the board for further consideration. Thank you. Thank you, Ms. Hatterson. Mr. Cater, we'll give you three minutes if you need them. Thank you. I'll try not to confuse you further. Judge, just to answer your question about what the employment practice is on page 14 of our brief, petitioner here challenged the agency's employment practice of regularly utilizing the Outstanding Scholar Program to select candidates for positions who failed to pass a competitive service examination. That's the employment practice that's at issue in this case. It affected Mr. Dowd because the use of that, and this is on page 147 of the appendix, we reconstruct and we're going to put your name on the list with these four other candidates who are on the Outstanding Scholar Program. And if you strike those... But that's different. Aren't we referring to something that happened subsequently? I mean, what you're focusing on is the 2000 selection, which is why I got confused by the brief. I appreciate that somewhere down the road in the reconstruction, there was a list and it included both candidates. And I have less troubles thinking that that is an as-applied challenge to an employment practice. But I think your burden is tougher than that because I think we're looking at a different selection process here, right? I think that the board's decision says that it was one selection. No, but I'm talking, we're looking at what happened in 2000 and not what happened years down the road in the reconstruction. So I don't think that we can use that to help you. What I'm saying is that the board's order in this case was reconstruct Larry Dow and four outstanding scholars. And we're saying if you have to reconstruct with Larry Dow and four illegal candidates, you can only choose Larry Dow. That's our argument. But I think the thing I most fear in this case is that this court will decide an issue which really hasn't been fully articulated in the record and it really hasn't been fully briefed, the issues of whether there's an entitlement to back pay. The board has said plain language of the statute, the OLA, authorizes the board to award a retroactive remedy of back pay and benefits. So I don't think it's that open a question before the board. But I don't want this court, in a case which really both parties agreed should go back for further factual development, to say something which either, perhaps inadvertently, would affect a huge realm of the board's jurisdiction. These are critical issues. Jurisdiction under 300 and the remedies under VO and 300. And if this court needs to decide them, this case probably would not be a bad vehicle. But the record is not right. And that's why we ask that the court remand the case. But you don't want us in this case, as I understand what you're saying, you don't want us in this particular case, on this present record, to decide or say anything about how the question of back pay should be decided. But you would have no objection, I take it, if we were to say that there seems to be a serious question about this, and therefore the case is moot. That wouldn't bother you, would it? That there is a serious question, and therefore the case is not moot. No, of course that would not bother us. You admit that it's an open question, isn't it? Well, in other words, it's a question that has not been decided. In this case. And certainly neither side can claim that the argument of the other side is frivolous. No, I don't think that I would call any argument the government would make on that score frivolous. That's a generous concession. But hold it to it. Thank you very much for your patience. Thank you, Mr. Cato. We'll take the case on the submission. We'll wait for conclusions. Thank you, Robert. Next case is Encyclopedia Britannica versus Alpine Electronics and Denso and Toyota and American Honda and Garmin 2009-10-87 We'll hear from Mr. Willie when he is ready. This is the court. There are two means plus function limitations at issue before the court here. And with respect to each, there is sufficient structure disclosed in the specification under the algorithm rule. But the district court should not have applied the algorithm rule to either limitation in this case. With respect to the retrieving means, the corresponding structure is a well-known computer function. And with respect to the accessing means, it is data or a data structure, and the court has never applied its algorithm rule to data or data structures. I would like to start with the retrieving means and then go to the accessing means. With respect to the retrieving means, there is structure disclosed in the specification. The specification discloses that the textual and graphical information is retrieved from a database. I'm having trouble, though, seeing how particularly with respect to the first retrieving means you can avoid aristocrat 2. Obviously, every case is somewhat different on particular facts and what the claims say. But I'm not seeing much daylight, frankly, between this case and aristocrat 2. There are several distinctions between this case and aristocrat 2. The first distinction is that to a person of ordinary skill in the art, retrieval from a database is a one-step algorithm. The second is that, unlike aristocrat 2, where the lack of algorithm went to the point of novelty of the invention, here, the alleged lack of an algorithm goes to a limitation where there's lots of prior art that when a person of ordinary skill in the art reads the specification, it immediately calls to mind a class of algorithms. But aristocrat 2 was quite detailed and, in my view, quite clear. They didn't make that distinction. There was nothing they relied on in that opinion that would suggest that there's an exception to the rule they stated, which seems to me to be quite broad. Well, this court's prior unpublished decision in aristocrat 1 does make that distinction, as does the Allboys case. In the Allboys case, there was a single box in a claim chart, figure 8A, and it said, go find a word in, like, a Microsoft Word document. Go find the location of a word. And the court's decision relies upon undisputed expert testimony that a person of ordinary skill in the art could achieve that function, that function reciting the claim, using a standard Microsoft operating system call. I'm troubled by the use of the word achieve that function. That sounds like enablement to me, whether they looked at it and said, oh, I know what I have to do. Yeah, there it is. Aristocrat 2 made it very clear that the test on the means plus function is not the same as the test of enablement. It doesn't have to, it isn't whether it's enabling, it's whether it discloses the proper structure. Correct, Your Honor, and there is a fine line. What is the structure that is disclosed here? What is it that someone looking at the specification would say, oh, I see, this is how one performs the function. Okay, the structure disclosed for performing the retrieving of graphical and textual information is a computer that retrieves the information from a database. Does it say how it retrieves it? It says how it retrieves it when it says it retrieves it from a database. To a person of ordinary skill in the art, that is disclosing a one-step algorithm like you had in the all voice case where you were just finding a word in a document. Here, the undisputed expert testimony is that that is something that one of ordinary skill in the art knew how to do when this patent was filed. But you don't mean Aristocrat 2 is clearly saying that's not sufficient, that just because one of ordinary skill in the art comes in and says he would have known how to do it, that that obviates the requirement that there's some disclosure of a specific algorithm? Aristocrat 2 focuses on a situation where the point of knowledge of the invention, what was new, was covered by the means plus function algorithm. I'm sorry, the means plus function claim. There was no algorithm because nothing comes to mind to a person of ordinary skill in the art when they see that in the specification because nobody's ever done it before. Here, when a person of ordinary skill in the art reads the specification, it immediately comes to mind, oh, they're just retrieving information from a database. There's lots of ways to do that. I can go buy a piece of software off the shelf where I execute that in one step. And this is really what Professor Polish was explaining that I think is a significant difference between this case and the Aristocrat 2 case. Because of the concept of encapsulation in computer science, there are certain functions that many years ago people have programmed them, and to a person of ordinary skill in the art, the function and the algorithm merge together. The undisputed evidence here is that a person of ordinary skill in the art may just be somebody who uses database systems. Well, if that person is using a database system, they know they can go buy one for which they send a single command, and the single command retrieves data from a database. And Professor Polish gives some other examples of this, saving a document to a disk. This Court's prior decisions have not required disclosure of a detailed algorithm where the information is well known to a person of ordinary skill in the art. Are you saying there's no algorithm involved here? No. No, Your Honor. Retrieving data from a database to a person of ordinary skill in the art is an algorithm because they can go buy a piece of software off the shelf that retrieves data from a database, just as they could in the Allboys case. So this case is very analogous to Allboys in that sense. And how do you get around Aristocrat? Because there is, well, several ways. Number one, in this case, we disclose a one-step algorithm. Number two, in this case, there's implicit disclosure of an algorithm to a person of ordinary skill in the art. You disclosed it, or, as you just said, in respect to the second, it's within the skill of the art. Right. And it depends upon what level of abstraction you look at the function and you look at the disclosed algorithm. But at the very least, the specification implicitly discloses to a person of ordinary skill in the art a class of algorithms because the undisputed testimony is that persons of ordinary skill in the art knew how to retrieve information from a database long before this patent was filed, and this court's prior decisions have repeatedly sanctioned implicit disclosure of corresponding structure for means plus function limitations. Let me ask you something about Aristocrat. Doesn't Aristocrat basically hold that where the structure is a general-purpose computer that performs or carries out the algorithm, the algorithm must be disclosed? I think broadly stated, that's true, but Aristocrat, too, did not, number one, address the situation where... Was there any algorithm disclosed in this specification? Yes, Your Honor. To a person of ordinary skill in the art, the disclosure that the software is retrieving the information from a database to a person of ordinary skill in the art, that is a disclosure of a one-step algorithm. But that's precisely the issue. I mean, your problem, it seems to me, is that's precisely the issue that arose in Aristocrat, too, where the other side was actually arguing that, and they had once skilled in the art, did they not? Testimony once skilled in the art, that they would have been able to discern it, and the court explicitly rejected it. They said, no, that's conflating enablement and means plus function, and it's not enough for just that one of ordinary skill in the art would have been able to do it. You need to disclose the structure. Am I misstating anything in Aristocrat, too? Your Honor, I think there's a subtle distinction. The subtle distinction is that in Aristocrat, too, the testimony was somebody would have known how to program this. Here, the testimony is people already have programmed it, and when somebody reads this disclosure, that class of algorithms is implicitly disclosed to them and explicitly disclosed to them in the sense of it's a one-step algorithm. Are there fact questions here, so that it shouldn't have been decided on summary judgment? Does it need to go back? Well, Your Honor, we think there's sufficient evidence in the record. There's undisputed expert testimony in the record here that a person of ordinary skill in the art knew how to retrieve information from a database. Well, we shouldn't be evaluating that, should we, on appeal? No, the district court should certainly, in the first instance, perform that analysis. Just a little break in the action here. We had a glitch with our timer, and it didn't begin, so you get a little free time, and if the other side needs a little extra time, we'll give it to them. So you have eight minutes. If you want to save five, you can keep going. Okay, Your Honor. Yes, I would like to keep going. One of the other distinctions between this case and the Aristocrat case is that there are numerous decisions of this court which sanction the use of implicit disclosure. Dossal, Intel, Atmel, Aristocrat I, and even Aristocrat II. Near the end of Aristocrat II, there's a discussion of the medical instrumentation case, and there's a sentence which suggests that you could have implicit disclosure if one of ordinary skill in the art would know what you're talking about. Here, again, the undisputed testimony is that database retrieval was well-known at the time of the invention, and when you disclose to a person of ordinary skill in the art that you're retrieving data from a database, that implicitly discloses to them a class of algorithms. With respect to the accessing means, this court has never applied the algorithm rule to data, and in In re Lauri, this court said, data in a memory is the essence of electronic structure. It is structure by itself. Here, there is an implicit disclosure of a pathway to a person of ordinary skill in the art. The specification is quite clear. What do you mean by implicit disclosure? You mean that someone seeing what is there said, well, this includes... Let me give you an absurd example. Suppose you had a machine that was able to tie shoelaces. People having trouble bending over and so on. So there's a machine that ties shoelaces and would have disclosed it as tying shoelaces. Well, I suppose you'd say there's an implicit disclosure in that that before you tie the shoelaces, you put your foot inside the shoe. But what is the implicit disclosure here? You mean that someone who has ordinary skill in the art reading the specification would say that while it doesn't say so, I know that's what it means? Yeah, that is appropriate when you are dealing with something that is well known to a person of ordinary skill in the art. I think that would be true in your example. But maybe you could tie the shoes without the person in there. My five-year-old ties his shoes sometimes without his foot being in the shoe. But this court's prior cases that recognize implicit disclosure, for example, the Dossal case and the Atmel case, recognize that when something is well known to a person of ordinary skill in the art, you don't need to put all of this detail in the specification. Here, when a person of ordinary skill in the art reads that, we're displaying an icon or a label, and when we click on that article or label, we get related information to that. A person of ordinary skill in the art knows you had to have a pathway to do that. What is a pathway? Excuse me? What is a pathway? A pathway is simply data that is a path from one piece of information to another piece of information. Takes you from one to the other? Takes you from one to the other. Allows you to find the other piece of information. It seems to me an aristocrat, too, they distinguish those cases. When they were talking about implicit, they said that really is a question of how much detail is required, but they made quite clear that the question thus is not whether the algorithm that was disclosed was described with sufficient specificity, but whether it was disclosed at all. So they recognize there's some implicitness, but they seem to say, well, the implicit stuff goes to the specificity of the disclosure, but you still need to disclose the algorithm. Right, and here we do disclose an algorithm to a person of ordinary skill in the art. You can disclose it inherently, though. Is that right? Your Honor, again, with respect to retrieving means, we contend that the disclosure is explicit. In the alternative, it's implicit, and the explicit argument relies upon the fact that when a person of ordinary skill in the art reads retrieve from a database, that's a one-step function to a person of ordinary skill in the art. The example our expert gave is, what if it said means for adding A plus B? Well, the algorithm for adding A plus B is just to add A plus B. That's what a person of ordinary skill in the art  The same thing is true here. When a person of ordinary skill in the art wants to retrieve something from a database, they do a procedure called to retrieve something from a database because long ago, somebody else wrote software that allows you to retrieve data from a database. All right, Mr. Steadman, you have agreed to split your time with Mr. Hawkins? That's correct, Your Honor. And I said we'd be a little loose here, but you still owe him an obligation, I gather, to stop. I will stop whenever I am told to stop, Your Honor. Tell us, what specifically do you think should have been in this patent to satisfy aristocrats? The court has given a lot of guidance as to what will work and will not work. It's not our job as the descendants in a case where there was no disclosure to say what would have been enough, and this case doesn't present that question. Well, what you're saying is it wasn't enough, and I think we'd like to know what would have been enough. Well, in Dossal, there was a specific algorithm disclosed, but the mathematical methods for solving the algorithm were not disclosed. That was adjudged to be enough. In WMS Gaming, the court said that it was not correct under claim construction to say it was any algorithm that performed the function. It was the specific algorithm disclosed in the specification, and that was disclosed. Mr. Stedman, you're not answering Judge Lurie's question. Judge Lurie asked you what in this case should have been disclosed that wasn't disclosed, and all you're doing is telling in other cases what was held. What is your answer to that? What more should there have been in the specification than there was? I take it that's Judge Lurie's question. Well, I guess our answer to that is our guidance comes from the cases of what has been adjudged to be enough and what hasn't been adjudged to be enough. We're not in a position to say what would have been enough. If you look at the reply brief filed by my opponent, page 9, footnote 6, you will see that they are claiming that it's the specific architecture of these limitations which is the point of novelty of the invention. That's the same position they took on reexamination because they added at least some of these limitations in order to get around the prior art. We don't know what it was that's in the invention that should have been disclosed that was the point of novelty for the retrieving function and the accessing function because it was not disclosed. Something should have been disclosed, whether it was code, whether it was a prose statement of the algorithm. Give us a sentence that would suffice. Well, one sentence that would be... Because this question, an algorithm is a formula or a process. It's a very vague terminology. We'd like to get some specificity. I think if they were taking the position that they're taking now that this was well-known and was a part of Windows, the sentence could have said it is the well-known retrieving function used by the Windows program Excel to retrieve data from the Excel spreadsheet. Then there would at least be a known algorithm to which someone could say is the algorithm used by the defendants equivalent or not equivalent. Your position basically, I take it, is that it's not enough to say that there was inherent in this something that a person of ordinary skill in the art would know that that's the algorithm involved. It wouldn't even have been enough if the specification itself said there are known algorithms and left it at that. And this court held in Bione Medino exactly that. The court held a bare statement that known techniques or methods can be used does not disclose structure to conclude otherwise would vitiate the language of the statute requiring disclosure of corresponding structure, material, or acts described in the specification. But it's kind of hard to get around in re docile in that regard, right? No, Your Honor. There's a very robust discussion of docile in Aristocrat II. And in that case, they go back and they look at docile and the patent in docile and they say, no, the algorithm itself was disclosed in docile. What wasn't disclosed was the technique, the mathematical technique for solving the algorithm. That was well known to people of skill in the art. But the language in docile, didn't that suggest that if you say it's known in the art, that's sufficient? It did suggest that that issue was resolved by Aristocrat II. When I look at Claim 1, it has probably a dozen claim limitations. Now it's true, every claim limitation matters. But accessing information and having the means for retrieving said information seemed to be fairly basic, not very novel. Are you reading from the claim? I'm reading from the claim. In the re-examination certificate? I'm reading from the judge's opinion. Did I misstate something? No, but if you look at page A80 in the appendix, which is the claim in the re-examination certificate, you will see that the words first retrieving means for retrieving said textual information and interrelated graphical information to said searched textual information is in italics. That is because it was added in order to overcome the prior art. But still, if it is basic stuff readily available to one skilled in the art, why doesn't it suffice? That is the position they take now, Your Honor, but as I said in their reply brief and elsewhere in this record, they admit that the specific architecture of that retrieving function and that accessing function is what the invention is and yet it is not disclosed. But even if it were a basic function, even if it were so basic that everyone knows it, it would still have to be disclosed, and that is a matter of statutory requirement. You mean the essence of the invention? I've got 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. I think what we're talking about are means clauses in clauses 11 and 12, and that's what takes it to the invention? Well, according to footnote 6 on page 9, my opponents write, and they're quoting from the record, the architecture embodied in part by the graphics-to-text pathway recited in claim 1 was an innovation that rendered multimedia searching something a child could use. They are claiming that the architecture of that particular issue is the innovation. But as I said, even if it were not, 35 U.S.C. Section 112 is a statutory mandate that requires disclosure in the specification even if it is well known. What about ENZO? ENZO? ENZO. Didn't we find the title of a publication referred to in the specification? I believe the case is ATMETL, Your Honor. ATMETL. Yes, you did. And in that case, there was expert testimony that the title of the article itself was enough to disclose to a person of skill in the art a particular algorithm. Here, there is no title in the specification. There's nothing in the specification. My opponent says it's disclosed by the words is retrieved, but that's exactly the same as the claimed function, retrieving and is retrieved. I wanted to bring two things to the Court's attention during my time. One is, and it has not come up this morning in oral argument, they have an argument that the dismissal without prejudice of the 018 patent was error. They did not disclose in their brief that there was a second pending case involving that patent. We fully briefed that. In that second pending case, Judge Yackel has now found that patent itself invalid on other grounds, and that is on appeal to this Court now. So, we contend there was no error, but even if there were some technical error, it is now moot because that patent has also been found invalid in a separate order. Well, we can't deal with that. What we can do is recognize that the Court said it can be dealt with in the other case. Correct, and that's why we contend it's not error. The second thing I wanted to bring to the Court's attention and also has not come up this morning is that after the briefing was complete in this case, there was another case on the so-called algorithm rule that is Blackboard versus Desire to Learn, and even more than Aristocrat, it considers almost word for word each of the arguments raised in their briefs and rejects them. And so, we would contend that between Aristocrat 2 and Blackboard, every single legal issue that's raised in this case has already been decided against Britannica. There's like a six-month lag between the time that Aristocrat 2 came down and the decision by Judge Riegel in this case. Did the parties present or offer up Aristocrat 2 to the District Court? Yes. In letters presented after the briefing, both parties discussed Aristocrat 2. And they submitted their reasons for why it applied or not? Yes, Your Honor. Is that in the record? Are the letters in the record? I do not believe that they are in the record. I'm going to expand the argument. I have one more thing I just wanted to note. You asked whether it was a fact question for remand. Because this is an issue of claim construction, it's a matter of law that this Court can decide. But with that, I yield the balance of my time         Mr. Hawkins. Mr. Hawkins. Mr. Hawkins. Mr. Hawkins. Mr. Hawkins. Mr. Hawkins. Mr. Hawkins. Mr. Hawkins. Good morning, Your Honors. On behalf of Alpine Electronics, Inc. and Alpine Electronics of America, INC., we have nothing more to add to the argument. Therefore, unless the Court has some questions, the Alpine athletes respectfully submit that for the reasons stated today and in the red brief,   No one ever gets penalized for not using the allot m white time. Thank you, Your Honor. Mr. Forgust,  Thank you, Mr. Hawkins. Mr. Woolley has a little rebuttal time. Not much to rebut with respect to Mr. Hawkins. Agreed, Your Honor. With respect to Aristocrat, Your Honor asked a question during my remarks and then followed up with Mr. Stedman on the application of Aristocrat and implicit disclosure. And the Aristocrat addressing In re docile did not really deal with the implicit disclosure aspect of docile, which was the implicit disclosure of a computer. It dealt with the issue of whether you had to disclose any algorithm at all because only the word known algorithms was used. At the end of the Aristocrat case, there is language addressing the medical instrumentation opinion, which says here, as in medical instrumentation, the patent does not disclose the required algorithm or algorithms and a person of ordinary skill in the art would not recognize the patent as disclosing any algorithm at all. I suggest that that and a person of ordinary skill in the art would not recognize the patent as disclosing any algorithm at all. It is an acknowledgement, given this court's prior decisions in Atmel and Intel and in docile, that there could be an implicit disclosure of corresponding structure that Aristocrat itself acknowledges that there can be an implicit disclosure of corresponding structure. Here, the undisputed expert testimony is that is precisely what you have because these are both well-known things. Our expert even gave examples of how these were in the prior art. We showed with the intrinsic evidence how the examiner understood the accessing means to be a pathway. That was disclosed by the hyperlink prior art. It is the same example. Our expert referred to. In both of these cases, we have well-known functions that when the person of ordinary skill in the art reads the specification, they understand that there is an implicit disclosure of algorithms. In the case of the retrieving means, there is an explicit disclosure because here there is a merger between the function and the algorithm because to a person of ordinary skill in the art, retrieving something from a database is a one-step algorithm just as adding two numbers together is a one-step algorithm just as saving a document to a disk is a one-step call to the operating system. Thank you, Mr. Whelan. We will take the case under advisement. Next case is since your appellant will hear you first. Thank you, Your Honor. Good morning, Your Honor. May it please the court. I am Fred Ikinson, counsel for the Appellant Home Products International and American     of the Commerce Department's third administrative review of the United States Department of Commerce. This is a case in which the United States Department of Commerce is responsible for reviewing the anti-dumping duty order on these products. In that review, Commerce found that the Chinese exporters, since hardware, had submitted information that was not reliable, that was false, that was unbelievable. We're basically familiar with the fact, but why isn't it governed by the rule of typo, which follows Zenith? All right, Your Honor. Let's talk about the type of cases. The Chinese manufacturers have taken an appeal from the grant of a preliminary injunction against liquidation  trial court, and the arguments made by type, by the American manufacturer in that case, Gleason, were very similar to the arguments we made. Essentially, that there was no showing of irreparable harm, immediate irreparable harm, to the move-on foreign exporter. And the reason for that was the foreign exporter was not the importer of records, not affiliated with the importer of records. Yes, but the problem for you is this court rejected all of those. Well, I'm about to distinguish. In Type's case, this court found that there was harm to the foreign exporter because the court presumed that there was an agreement to reimburse the dumping duties that the importer would have to pay. And that was the finding by the court, the presumption by the court. And I can assure you that in our case, there is no reimbursement agreement from Sins Hardware to the importers who have to pay. In the record in our case, we showed that Sins Hardware stated it didn't even know the identities of the U.S. importers of records. Well, the court said, if I'm understanding you correctly, what the court said was Typha may have the distinct probability that Typha will ultimately incur the charge or lose customers. So I suppose one could say there wasn't an explicit finding, but there was certainly a finding of probability. And in our case, there can be no such finding of probability. To complete my answer, I'm not going to   details of the case, but I'm going to say that there was no reimbursement in the Typha case, either. And there is really very good reason for assuming there's no reimbursement. Under the anti-dumping law, if a foreign exporter reimburses a U.S. importer for dumping duties, that is viewed as additional dumping, which will lead to additional duties. Reimbursement is effectively prohibited by the anti-dumping regulations. However, I didn't come here this morning for the purpose of criticizing Typha. I'm bound to accept Typha. And I appreciate it. I think it's very responsive to the kinds of questions we have. But getting back to our case, you're not critical of the CIT in our case. They didn't make any such findings. They just analyzed the four factors and said in his discretion he decided the injunction was warranted, correct? He didn't rely on the fact that there was  to the court. No, the lower court didn't discuss that. This came anew from this court. The whole discussion of reimbursement and money being paid by the Chinese exporter to U.S. importers came up for the first time from this court. And that's not a court of international trade in our case. They simply relied on just evaluating the four factors, particularly public interest. Correct. And we addressed the court's reasoning in our main brief and we argued that there was no shown by the lower court that there was indeed irreparable harm. The lower court said if the American manufacturer loses his opportunity to challenge a duty for being too low, then the foreign manufacturer  in a similar position. But that doesn't go to the question of where is the harm. The harm certainly is felt by the importer. The importer has to ante up, has to pay that money. The foreign exporter could be harmed by a high duty rate, as in this case, not because of the assessment on duties of a total stranger to him, but on future events. Under your argument, I take it, what you say should have been done in this case is the suit should have been dismissed for lack of standing, perhaps. I don't think it was lack of standing. It was definitely not lack of standing. I thought, why isn't there lack of standing if they haven't been injured? Because the           would be the case. I think it was necessary to do that. I think it was necessary to do that.    necessary to do that.